**EGGSTAFF, Adm'x, et al. v. PHELPS.**

No. 13511—Opinion Filed April 22, 1924.

**1. Adoption—Validity of Contract—Consideration—Right of Child to Enforce.**

An agreement to adopt a child as one's own, and make it an heir, is a valid consideration for the contract of adoption, and the child for whose benefit the contract is made may maintain an action for the enforcement of such contract.

**2. Same—Contract not in Writing.**

It is immaterial that the contract of adoption is not in writing, as statutes relating to the adoption of children are not exclusive to the extent that no right to take property by an adopted child may be created in any other way.

**3. Frauds, Statute Of—Performance of Oral Contract.**

The complete performance of an oral contract on the part of the party seeking to avail himself of its benefits takes the case out of the operation of the statute of frauds.

**4. Adoption — Invalidity — Protection of Rights of Obligee.**

Though an agreement may be invalid as a contract of adoption, it may be valid as a contract to make certain testamentary provisions for the obligee, who has fully performed on his part.

The petition examined, and held sufficient to state a cause of action.

**5. Same—Establishment of Contract—Evidence.**

The evidence required to establish a contract of adoption must be clear, definite, and conclusive.

**6. Same — Specific Performance of Oral Contract.**

Where the petition for specific performance pleads an oral contract for adoption, and fulfillment of same on part of mother and child, and for participation in estate of decedent, and the evidence is sufficient to prove the same as pleaded, and the nature of the services rendered are such that their value cannot be estimated in money value, and the proof further shows that the parties did not so intend, equity will grant the relief prayed for.

**7. Same—Defensive Evidence—Change of Mind of Obligor.**

In the trial of the issues for specific performance of contract for adoption the defendant will not be heard to say the decedent changed her mind after the fulfillment of the contract on the part of the plaintiff, and it is not error for the court to rule out testimony having a tendency to show such change.

**8. Same—Evidence of Plaintiff — Harmless Error.**

Testimony in such case on the part of plaintiff as to her general treatment of her foster parents and their affection for her in acts of kindness is competent as a part of the res gestae on the issue of fulfilling the contract, but testimony as to conversation when they revealed to her the true facts of her relationship as a daughter and proof of her foster mother giving consent in writing to her marriage would be immaterial to the issues, and erroneous, but, the cause being tried to the court, harmless.

**9. Specific Performance—Void Lease as Estoppel.**

Where a void lease contract is pleaded as a defense in an action for specific performance, no question of estoppel is raised thereby against the plaintiff.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Major County; Guy F. Nelson, Assigned Judge.

Action by Hattie M. Phelps against Mary J. Eggstaff, administratrix, et al. Judgment for plaintiff, and defendants bring error. Affirmed.

C. B. Wood, Benjamin F. James, Charles H. Farrell, and Tom E. Willis, for plaintiffs in error.

Frank L. Wells, and Ed Baker, for defendant in error.

Opinion by THREADGILL, C. The defendant in error, plaintiff below, commenced her action in the district court of Major county September 13, 1918, against the plaintiffs in error, defendants below, and thereafter, on April 30, 1919, plaintiff filed an amended petition, stating, in substance, that she was a resident of Major county; that Sila Ann Scott, deceased, was at the time of her death, March 8, 1918, and for a long time prior thereto, a resident of said county, and at the time of her death left an estate of both real and personal property in said county, which estate was solvent and in process of administration with Mary J. Eggstaff as administratrix; that said decedent was a widow at the time of her death and the defendants claimed to be her only heirs; that in 1874, at Creston, in Union county, Iowa, the said Sila Ann Scott, being a resident of said county, entered into an oral contract with a Mrs. Reece, who was the mother of the plaintiff herein, in which it was agreed that the plaintiff's mother should relinquish all claims to her as her child to the said Sila Ann Scott forever; that plaintiff was about two years old at that time, and the said Sila Ann Scott entered into the agreement to accept the plaintiff and to assume all duties as a mother toward her and treat her as her own child, and agreed to adopt the plaintiff, and that upon the death of the said Sila Ann Scott the plaintiff should inherit all the property which she possessed at her death. In pursuance of this agreement the plaintiff was delivered into the possession of Sila Ann Scott and was reared by her and her husband, and her name was changed to Hattie M. Scott, and she was brought up in the Scott family under the belief that she was their natural child, and did not know otherwise until she was about 14 years of age; that the said Sila Ann Scott and her husband had no children born to them and reared no other children except the plaintiff; that the relation that existed between the plaintiff and the Scotts was one of filial affection, that when she grew up they introduced and represented her to be their daughter, and she knew and called them father and mother; that when she was 17 years old she married under this name; and at the time she married, the said Sila Ann Scott gave her consent in writing, and after her marriage she and her husband resided in the same neighborhood where the Scotts lived and the same filial relation continued until the death of Mrs. Scott, which event took place in the home of the plaintiff; that Sila Ann Scott died intestate and left 280 acres of land and personal property; that the defendants are all brothers and sisters or descendents of deceased brothers and sisters of Sila Ann Scott. Plaintiff states further that said Sila Ann Scott wholly failed and neglected to perform the contract she made with the mother of the plaintiff in not providing that the plaintiff have her property. She further pleads that she has faithfully performed the contract between her mother and Sila Ann Scott and has received nothing of the estate; that the laws of adoption of the state of Iowa where the contract was made are applicable to her rights, a copy of which she attaches to the petition; she states further that she has no remedy at law, and she prays for specific performance of the contract as heir to the estate.

The defendants demurred to the amended petition on the ground that it did not state a cause of action, which being overruled, they filed their answer consisting of a general denial and pleading the statute of frauds and estoppel, and plaintiff replied by general denial. The issues were tried to the court without a jury on December 20, 1920, and taken under advisement by the court until July 5, 1921, when the court rendered the following judgment:

"And now on this the 5th day of July, 1921, being one of the regular judicial days of the regular July, 1921, term of said court, said cause came on regularly for further consideration by the court, the said, the Honorable J. C. Robberts, presiding, and the plaintiff being present in person and by her attorney, Frank L. Wells, and the defendants being present by their attorneys, C. B. Wood and Tom E. Willis, whereupon the court makes findings of facts and conclusions of law, which are duly filed with the clerk of this court, and which are as follows, to wit:

"1. At the conclusion of the case, the court finds that the allegations of the plaintiff's petition are true, and that in the year 1873, at a time when the plaintiff

was about two years of age, in Union county, Iowa, Mrs. Reece, the mother of the plaintiff, was living apart from her husband, having been abandoned by him and was supporting the plaintiff and several other small children, and at that time she entered into the oral contract with said Sila Ann Scott, now deceased, having died in Major county, Okla,, on the 18th day of March, 1918, intestate, and without issue, leaving no heirs except the defendants herein, who are her brothers and sisters, and the children of deceased brothers and sisters, the said Mary J. Eggstaff being the duly appointed, qualified, and acting administratrix of her said estate; in which said contract it was agreed between said Mrs. Reece as the mother of the plaintiff, and the said Sila Ann Scott, that Mrs. Reece would and did give and delivered to the said Sila Ann Scott, said child, with the promise and agreement that Mrs. Reece would never reclaim said child, or take her away from Mrs. Scott, but would and did forever relinquish all care, custody and control of said child to Mrs. Scott.

"2. The court further finds that Mrs. Scott did, under said agreement, agree to and did take said child as her own, and changed her name to Hattie M. Scott, and agreed to and did bestow upon her the same care, love and affection and service as if she had been her own natural child; and also agreed to adopt the plaintiff and make her, her heir, and agreed that at her death she would leave her all of the property of which she might die seized.

"3. The court also finds that the plaintiff lived with the said Sila Ann Scott until she was grown and married, and that she at all times bestowed upon her said foster mother the same service, obedience, love and affection as if she had been her actual mother; that she never knew that she was not her natural mother until she was practically a grown woman, that she always went by the name of Hattie M. Scott, and was married under that name, and was known and recognized as Hattie M. Scott among her school mates, neighbors and acquaintances until her marriage.

"4. The court further finds that said Sila Ann Scott wholly failed and neglected to perform the aforesaid contract in this, to wit:

"She did not by will or deed bequeath or give the property of which she died seized to this plantff, but died intestate.

"5. The court further finds that the plaintiff on her part fully and faithfully performed all things to be done by her by the terms of said contract, and all things to be done and performed by her said mother, Mrs. Reece, have been done and performed; that the plaintiff has not received the property of which the said Sila Ann Scott died seized, as the natural or adopted child of said Sila Ann Scott, and that said Sila Ann Scott at the time of her death was a widow, and left as her heirs at law the defendants herein, and none other, subject to the equitable rights of the plaintiff; that the estate of the said Sila Ann Scott, deceased, is solvent, the personal property thereof being of the value to exceed $2,000; that the total debts provable against said estate do not exceed the sum of $500, and the costs and expenses of the administration of said estate will not exceed the sum of $500; that at the time said contract was so made, as aforesaid, the said _____ Reece was living separate and apart from her husband, and had exclusive care, custody, and control of the plaintiff; that the laws of the state of Iowa applicable hereto are as follows:

"Section 2307. Any person competent to make a will is authorized in manner hereinafter set forth, to adopt as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock.

"Section 2308. In order thereto, the consent of both parents if living and not divorced or separated, and if divorced or separated, or if unmarried, the consent of the parent lawfully having the care and providing for the wants of the child, or if either parent is dead, then the consent of the survivor, or if both parents be dead, or the child shall have been and remained abandoned by them, then the consent of the mayor of the city where the child is living, or, if not in a city, that of the clerk of the circuit court of the county where the child is living shall be given in such adoption, by an instrument in writing, signed by the parties or party consenting, and stating the name of the parents, if known, the name of the child, if known, and declaring the name by which such child is thereafter to be called and known, and stating also that such child is given to the person adopting, for the purpose of adopting as his own child.

"Section 2309. Such instrument in writing shall be also signed by the person adopting and shall be acknowledged by all the parties thereto in the same manner as deeds affecting real estate are required to be acknowledged; and shall be recorded in the recorders office in the county where the person adopting resides, and shall be indexed with the name of the parent by adoption as grantor and the child as grantee, in its original name. if stated in the instrument.

"Section 2310. Upon the execution and acknowledgement and filing for record of such instrument the rights, duties, and regulations between parents and child by adoption shall thereafter in all respects, including the rights of inheritance, be the same

that exists by law between parents and child by lawful birth.

"Section 2202. Property rights of married women: A married woman, may own in her own right real and personal property, acquired by descent, gift or purchase, and nanage, sell and convey the same, and dispose thereof by will, to the same extent and in the same manner the husband can property belonging to him.

"6. That James Kayle, defendant herein, and James H. Kayle, are one and the same person; that Lucy Tyson and Lucy Kale Tyson are one and the same person.

"7. The court further finds at the time of the death of the said Sila Ann Scott, she was the owner of certain personal property of the value of $2,000 and was also the owner of real estate in Major county, state of Oklahoma, as follows, to wit:

"The northwest quarter (NW¼), and the west half (W½) of the southwest quarter (SW¼), and the west half (W½) of the east half (E½) of the southwest quarter (SW¼), all in section seven (7) in township twenty (20), north of range thirteen (13), west of the Indian Meridian, of the value of about $5,600. That her indebtedness at the time of her death did not exceed the sum of $500.

"And thereupon the court makes conclusions of law based upon said findings, as follows, to wit:

"1. Section 895. Statutes of Oklahoma, 1910, provides that:

"'A contract, made expressly for the benefit of a third person, may be enforced, by him at any time before the parties thereto rescind it.'

"2. There being no showing to the contrary the presumption of law is that the state of Iowa has the same statute.

"3. An agreement to adopt a child as ones' own, and make it an heir, is a valid consideration for the contract of adoption, and the child for whose benefit the contract is made may maintain an action for the enforcement of such contract. Chehak v. Battles, 143 Iowa, 117, 110 N. W. 330.

"4. It is immaterial that this contract of adoption was not in writing, as 'statutes relating to the adoption of children are not exclusive to the extent that no right to take property by an adopted child may be created in any other way.—Id.

"5. Contracts for the adoption of children may be specifically enforced, and this being in effect, such a contract might, as a matter of equity and justice and hereby is enforced by this decree. Volume 26, Am. & Enc. Law, 57; Burns v. Smith, 21 Mont. 69, 53 Pac. 742; Healy v. Healy, 167 N. Y. 672.

"6. Though an agreement may be invalid as a contract of adoption, it may be valid as a contract to make certain testamentary provisions for the obligee, who has fully performed on his part. Id.

"7. The contention of the defendants that the contract is within the statute of frauds is not sustained by the authorities.

"The adoption of a child may not of a necessity be in writing. The law will not allow one of the parties to an oral contract to adopt, to work an irreparable wrong to one who has fully performed his part of the contract. The law regards the fact that the adopted child takes the place of a daughter in the lives of her adopted parents, as a sufficient consideration to support the contract of adoption."

"8. The court further concludes as a matater of law that the contract involved was and is a valid and legal contract of adoption and in equity and good conscience should be and hereby is by this decree enforced, and the plaintiff being the only child and heir of the deceased, Sila Ann Scott, as such, is entitled to all the property owned by the deceased, Sila Ann Scott, at the time of her death, including the real estate hereinbefore described in the petition, and in these findings of facts; and that the title to said real estate should be forever quieted in the plaintiff, Hattie M. Phelps, and that the administratrix, after paying the expenses of administration, and the debts of the estate, should turn the personal property, or the proceeds thereof remaining in her hands, over the plaintiff, Hattie M. Phelps; the court costs of this proceeding should be paid out of said estate.

"Wherefore it is by the court considered, ordered, adjudged and decreed that the plaintiff, Hattie M. Phelps, is the sole and only heir of Sila Ann Scott, deceased, and that the defendants, nor either of them shall take anything by reason of this action; that the plaintiff is the owner of the following described real estate, to wit:

"The northwest quarter (N. W. ¼) and the west half (W. ½) of the southwest quarter (S. W. ¼) and the west half (W. ½) of the east half (E. ½) of the southwest quarter (S. W. ¼) all in section seven (7), in township twenty (20) north of range thirteen (13) west of the Indian Meridian, situate in the county of Major and state of Oklahoma, and that the title to the same is hereby quieted in her forever.

"It is further considered, ordered, adjudged and decreed that the defendant, Mary J. Eggstaff, as administratrix of the estate of said Sila Ann Scott, deceased, shall pay to the plaintiff the whole of the proceeds of the personal property of such estate remaining in her hands, after payment of debts of such estate, and the costs of administration of such estate, that has not been sold, the

property shall be delivered to the plaintiff. That the costs of this action taxes at $75.45 shall be paid by such administratrix out of the funds of said estate. At the end of each paragraph the defendants excepted and their exceptions allowed by the court."

Motion for new trial being overruled defendants appeal by petition in error and case-made, urging numerous assignments of error, the principal of which are that the demurrer to the petition should have been sustained and the evidence was not sufficient to support the judgment.

1. The defendants contend that the title and conveyance of real estate are involved in the relief asked for by the plaintiff, and the contract pleaded by her being a verbal contract would bring the cause within the rule of the statutes of fraud requiring the contract to be in writing.

We cannot agree with this contention. There is some conflict of authorities as to the rule in adoption cases but we think the great weight of authority is stated as follows in 36 Cyc. 674:

"'Another frequent type of a contract is found in an informal agreement with the parent of a child to adopt the child, and make it an heir of the promisor, or give it a child's portion of the promisor's estate. The total change of position on the part of the child and its natural parents, the assumption of the filial relation to the adopting parent and the rendering of such services and duties of affection as naturally flow from that relation present a case where the recovery of compensation for the pecuniary value of the services would be an utterly inadequate remedy."

To the same effect we have the following language in 25 R. C. L., section 193:

"Where the consideration for a promise to devise land is the rendition of service of such a nature or peculiar character that it is impossible to estimate their value to the promisor by any pecuniary standard their rendition has been held in a number of cases a sufficient part performance to take the contract out of the statutes of frauds." Pomeroy on Specific Performance, section 31; Winne v. Winne, 166 N. Y. 263.

Supreme Court of Iowa has held that adoption contracts are not within the statutes of fraud. Chehak v. Battles, 133 Iowa, 117, 110 N. W. 330, 12 Ann. Cases, 144; Stiles v. Breed, 157 Iowa, 86, 130 N. W. 378.

Many other states support the same rule. Lynn v. Hockaday, 162 Mo. 111; Burns v. Smith (Mont.) 53 Pac. 742; Kofka v. Bisicky (Neb.) 25 L. R. A. 207; Vantine v. Vantine, (N. Y.) 1 L. R. A. 155; Nowack v. Berger (Mo.) 31 L. R. A. 210; Purcell v. Corder et al., 33 Okla. 68, 124 Pac. 457.

From these authorities we must conclude that plaintiff's amended petition was sufficient to state a cause of action and the demurrer of the defendants was properly overruled.

2. The defendants further contend that the evidence does not support the judgment, citing the rule laid down in the Iowa cases, "that the evidence to establish such a contract must be clear, definite, and conclusive." Briles v. Goodrich (Iowa) 90 N. W. 354; Chew v. Holt (Iowa) 82 N. W. 901; Truman v. Truman (Iowa) 44 N. W. 721.

We have carefully read the evidence in the case and we think it sufficient to meet the requirement of the rule as laid down in the above cases as well as the rule required in specific performance cases in this state. Hayden et al. v. Danenburg et al., 42 Okla. 776, 143 Pac. 859; Oak v. Burling, 21 Okla. 864, 98 Pac. 580; Moore v. Adams et al., 26 Okla. 48, 108 Pac. 392; Star v. Star, 94 Okla. 225, 221 Pac. 721.

3. We think where the petition for specific performance pleads an oral contract and fulfillment of same such as the one under consideration, and the evidence is sufficient to prove the same according to the requirements of the rule above stated, and the evidence shows that the plaintiff has fulfilled her part of the contract, and the nature of the services rendered are such that their value cannot be estimated in money value, and the proof shows that the parties did not so intend, equity will grant the relief prayed for. Elliott on Contracts, vol. 3, secs. 2299, 2300, 2325; 25 R. C. L., section 143, page 589; Baldwin v. Baldwin (Kan.) 84 Pac. 568; Englebrecht v. Herington, (Kan.) 172 Pac. 715; Quinn v. Quinn, 5 S. D. 328, 58 N. W. 808; Smith v. Cameron, 92 Kan. 652, 141 Pac. 596; Grindling v. Rehl, 149 Mich. 641, 15 L. R. A. (N. S.) 466; Odenbreit v. Uthe'n (Minn.) 154 N. W. 741; Flod v. Templeton (Cal.) 92 Pac. 78; McCabe v. Healey (Cal.) 70 Pac. 1008; Brenton v. Van Cott (Utah) 33 Pac. 218; Bless v. Blizzard (Kan.) 120 Pac. 351; Holland v. Holland (Kans.) 132 Pac. 989; Purcell v. Corder, 33 Okla. 68, 124 Pac. 457; Pomeroy's Specific Performance, page 268.

In Lynn v. Hockaday, 162 Mo. 111, the general law approved by the great weight of authority in these cases cited is as follows:

"The adoption of the child may not of a necessity be in writing; the law will not allow one of the parties to an oral contract

to adopt, to work an irreparable wrong to one who has fully performed his part of the contract. An agreement by a husband and wife with the grandmother of an orphan child to keep such child as their own, and the giving of the child to them on the faith of such agreement, the immediate change of her name to that of their own, the hiding from her of her real name and identity until she was seventeen years old, and the full performance on their part in the keeping and caring for the child, and the performance by the child of her share as their daughter, is in every respect an executed deed of adoption, except it lacks formal execution. Being a contract performed it entitles the adopted child to share as distributee in the husband's estate.

"The law regards the fact that the adopted child takes the place of a daughter in the lives of her adopted parents as sufficient consideration to support the contract of adoption."

4. The defendants complain of not being permitted by the court to introduce certain testimony tending to show that Sila Ann Scott had changed her intention after the marriage of plaintiff to leave her property to her at her death. We cannot see where this testimony would help the defendants or how they could be injured by its exclusion as it cannot be contended that Mrs. Scott could change her intention after fulfillment of the contract on the part of plaintiff and thereby deprive the plaintiff of her rights in the estate, and the defendants fail to show in what particular their cause was prejudiced by the act complained of.

5. The defendants further complain that they were deprived of a fair trial by the court allowing the plaintiff to testify as to what Mrs. Scott and her husband told her when she was 14 years of age as to her not being their natural child, and in permitting her to testify as to Mrs. Scott's giving her consent in writing to her marriage when she was about 17 years of age, and also as to her treatment of Mrs. Scott. This testimony as to plaintiff's treatment and conduct toward her foster mother, Mrs. Scott, was competent for the purpose of proving the fulfillment of the contract and the other part of the testimony complained of could not serve any useful purpose for the plaintiff, and we cannot see where it injured the defendants, and the defendants failed to point out in their brief where they were prejudiced by it.

6. It appears from the record that at the time Mrs. Scott died the plaintiff and her husband were living in the home with her on the land in controversy, and after her death they continued to live in the home, and an administrator of the estate being appointed, she and her husband made a lease contract with the heirs, the defendants, by which they continued in possession of the premises, and the defendants contend that having recognized in this manner the ownership and rights of the defendants that she is estopped to prosecute this action in specific performance, and the plaintiff contends that since the said real estate was in the hands of an administrator the heirs could not assert any rights in a lease contract and the same was void and not binding on either party, and we think the plaintiff is right in this contention, and the same is supported by the rule laid down in 11 Am. & Eng. Encyc. of Law (2nd Ed.), under the head of Estoppel, page 433, which reads as follows:

"Knowledge of Party to be Estopped:

"It may be stated as a general rule that the representation or concealment relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence."

Also page 393:

"No question of estoppel by deed can arise where the instrument is absolutely void."

In conclusion, the defendants question the weight and sufficiency of the evidence, and specially criticize the evidence of Ida F. Boyce as unreasonable and insufficient to establish the contract pleaded. They say she was a sister of one of the attorneys for plaintiff. This might be cause for examining her testimony more carefully than otherwise to determine what interest, if any, she had in the case. This is on the presumption that a witness under oath will speak the truth unless deflected by some strong selfish interest or ulterior motive. From an examination of the record we are unable to find any selfish interest or personal ambition for her brother as an attorney or any other reason other than to speak the truth upon which to base or explain her testimony, and the defendants fail to point out any to overcome the presumption to speak the truth.

The defendants complain that her testimony is unreasonable and they cite authorities where they contend similar testimony was held without credit and weight. We understand that in cases of this sort that every case must stand upon its own merits.

We have gone into the record on the point complained of and it appears that the witness was present when Mrs. Scott and Mrs.

Reece made the agreement. We cannot see anything unreasonable in the facts and circumstances. Mrs. Reece was the mother of the two year old child. she was the victim of poverty, disappointed love, and desertion, and with no means of support, except "common labor," as a cook in a restaurant with this small child pulling at her heart strings, and clinging to her skirts, or prattling on the sidewalks and in the street amidst the dangers of this motor age. The mother could not take care of the child and do her work. It is reasonable to assume that the strain and anxiety of the situation was great. It is common observation that a woman with a small child cannot find many places open to her for "common labor," she must take what is offered or do worse; her services are not sufficient to pay someone to take care of the child while she works.

She must have food and shelter or go into the streets with the child. It is not unreasonable or uncommon under these conditions for the mother to give up her child to the care of others or even the mercies of the general public. And what of the circumstances of Mrs. Scott and her husband. They lived on the farm, were good people and were childless. The mother heart is natural and where there is no child of her own body to satisfy it she seeks the nestle and prattle in other objects. Witness the childless woman who cuddles the poodle dog for its lick and worship, or maltese cat for its purr and affection, or even animal pets of the more common type. Mrs. Scott, in some ordinary manner, understood that Mrs. Reece was willing to dispose of her child, and Mrs. Scott goes to see her and the agreement is made by which Mrs. Reece commits the child to the care of Mrs. Scott, and Mrs. Boyce was present and heard what was said and gives the facts as found by the court's judgment. Is not this testimony consistent with human experience? A person unacquainted with the curse of abject poverty and the character of the childless woman might not understand it. It is the cry and pain of the unfortunates. The facts related by Mrs. Boyce are corroborated by the facts and circumstances of the plaintiff's life and training in the Scott family. We think the testimony sufficiently strong, cogent, convincing, and above criticism for probity and weight.

By the Court: It is so ordered.